(91 App. Div. 521.)

## STEINACKER v. HILLS BROS. CO.

(Supreme Court, Appellate Division, Second Department.    March 11, 1904.)

1. DANGEROUS POSITION—CONTRIBUTORY NEGLIGENCE.
    Plaintiff, a truck driver, while waiting in a line of trucks to obtain access to a pier, alighted to replace a bridle on one of his horses, and in doing so took a position between the tongue of his wagon and the rear of the preceding truck, and was injured by the driver of the truck next following plaintiff's undertaking to draw out of the line, by which plaintiff's truck was forced forward, catching plaintiff between the pole of his truck and the wagon in front of him. *Held*, that though plaintiff's act in assuming such position was careless, under the circumstances, such act did not constitute contributory negligence as a matter of law, since plaintiff's position would not have caused the accident but for the negligence of the driver of the rear truck.

2. SAME—NEGLIGENCE.
    The failure of defendant's servant to discover that plaintiff was not on his truck, and to use care to ascertain plaintiff's position before endeavoring to turn out of the line, constituted sufficient negligence to render defendant responsible for the injury.

3. SAME—EVIDENCE—EXPERTS—PHYSICIANS.
    Where a physician had amputed a leg, it was not necessary that he should have been present during the time the leg was dissected after amputation, under his direction by his assistant, in order to qualify him to testify as to the results thereof which he saw and knew of his own knowledge.

Appeal from Trial Term.

Action by Charles Steinacker against the Hills Bros. Company. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

87 N.Y.S.—3

C. N. Bovee, Jr., for appellant.

Louis Oppenheim (J. Stewart Ross, on the brief), for respondent.

WOODWARD, J. There is no dispute that on the 14th day of September, 1901, between the hours of 4 and 5 p. m., the plaintiff, Charles Steinacker, a truck driver, was seriously injured by being caught between the pole of the wagon in his charge and some boxes on a wagon standing in a line in front of his team, and it is substantially agreed that the plaintiff got down from his seat upon the wagon and went to his horses' heads for the purpose of adjusting the bridle of the off horse, and that he was injured by the team in the rear of plaintiff's wagon starting up and coming in contact with the latter, forcing plaintiff's team forward. It seems that the plaintiff, with a load of goods, was seeking admission to Pier 26, North river; that he had taken his place in line, with other teams, some ahead and some behind him, and was waiting his turn to get inside. While thus waiting, moving forward as space was made in front, one of plaintiff's horses rubbed his bridle partially off, and the plaintiff got down from the wagon, passed in front of the horses, and reached up to adjust the bridle on the off horse. While thus engaged his team was forced or stepped forward, catching him between the pole and the wagon in front of him, producing a hernia, which subsequently resulted in a gangrenous condition of one of his legs, rendering amputation necessary. The evidence indicated that there was but little space between the teams, and that there was the usual crowding for positions, and there was some evidence that the defendant was the owner of the team and wagon directly in the rear of the plaintiff's wagon, and that the driver undertook to draw out of the line, and that in so doing his wagon struck the rear of plaintiff's wagon, producing the forward movement which resulted in the accident. The trial resulted in a verdict for the plaintiff of $5,000, and, from the judgment entered, appeal comes to this court.

It is urged on appeal that the plaintiff was guilty of contributory negligence, and we are free to say that, had the jury taken this view of the question, its conclusion might easily be sustained. Taking into consideration the conduct of drivers of freight vehicles, knowing the disposition of mankind to crowd for position in every walk of life, a jury might very properly have held that the plaintiff had not exercised that degree of care which a reasonably prudent man would or should have used under the circumstances. And yet it was peculiarly a question of fact to be determined by the jury, for the evidence quite fully disclosed all of the facts and circumstances surrounding the accident. The plaintiff had a right to go where he went for the purpose of adjusting his bridle; he had a right to assume that those in the rear of his wagon would exercise reasonable care not to collide with his wagon; and if there had been no collision, in the view which the jury took of the evidence, the injury to the plaintiff would not have resulted. The plaintiff, in going into this space of two or three feet between his wagon tongue and the rear of the wagon in front of him, assumed, as a matter of law, only the dangers which were known and obvious to him, which would include the danger of his own team, left without a driver, moving forward upon him, and not the danger of some third person dis-

regarding his duty; and it was for the jury to determine whether the plaintiff, by this conduct, had exercised that degree of care which he was called upon to use under the circumstances. Assuming that the plaintiff's team did not move forward of its own accord—and the jury has determined that it did not—in the absence of the defendant's negligence the accident would not have occurred; and even though it might be said that the plaintiff was negligent in going into this position, if that negligence did not operate to produce the accident, it was not contributory negligence. It may have been careless of him, considering the things that might happen; but the accident which did happen was not caused by his presence in that position, but by the negligent conduct of the defendant's driver, and upon this is predicated the liability.

While the evidence of the defendant's negligence is not as clear as might be desired, we are unable to say that there was not sufficient evidence to support the finding of the jury. It is true, perhaps, as suggested by the appellant, that there is no direct evidence to show that the defendant's driver had any notice of plaintiff's position and danger; but there was evidence of the circumstances surrounding all of the parties, and, in the absence of special conditions, it may be assumed that the driver of a wagon in the immediate rear could, by the use of his eyes, have discovered that the plaintiff was not on the wagon and in control of his team, and this would have been notice to him that the situation required a higher degree of care than would be necessary if the plaintiff was in his seat on the wagon, and would impose the duty of acting accordingly. A slight exertion would have discovered the position of the plaintiff, and an element of negligence might be properly inferred from a failure on the part of defendant's driver to make this observation, in view of the obvious danger of running into a team which was without a driver upon the wagon or in control of his horses.

Perhaps the most stubbornly contested point in the case was the identity of the defendant's driver and team. The defendant made a strong effort to show that it had no team at this dock at the time of the accident, attempting to account for all of its teams and drivers upon that day, and the jury might have found, from the evidence, that the plaintiff had failed to establish that the defendant was liable for the accident. But there was evidence in support of the plaintiff's theory; evidence of a persuasive character, and of sufficient weight to support the verdict. The case was submitted to the jury upon a charge which, as concluded, was without objection or exception by either party, all of the requests of the defendant having been charged, and we see no reason for disturbing the judgment.

The defendant urges that error was committed in permitting certain questions to be answered by the doctor who amputated plaintiff's leg. He had testified to the amputation, and that after the amputation "I made an examination to determine what had caused the gangrene of the leg. I had something done. I did not do it myself. It was done under my supervision." Asked, "What was it?" the witness started to reply, and was interrupted by defendant's counsel, who asked: "Did you see it done? A. I saw the results. Q. Were you present when it was done? A. No. Mr. Bovee: Then I object to it. The Court: He said he saw the results. If he saw the sections, he may answer. Mr.

Bovee: I object to it as incompetent, and except." The doctor then replied: "I had a section made of the amputated part, and this dissection disclosed a clot in the lower part of the femoral artery." He explained that this was a clot of blood, and was asked where it was located. Defendant's counsel objected to this as incompetent "unless the doctor knows. The Court: Of course, he is asked for his knowledge. (Objection overruled. Defendant excepts.)" The witness then answered, giving the location of the clot. The last objection was not absolute; it was only "unless the doctor knows"; and the evidence was admitted upon the theory that the doctor did know, for he testified positively after the court had stated that the question asked only for the knowledge of the physician. We think it was competent for the physician who made the amputation to direct an assistant to dissect the leg after it was removed, and to testify as to the results which he saw. It was not necessary that he should have been present during the time the dissection was actually in process; it was enough if he knew the facts to which he testified.

We have examined the further exceptions in this case, but without finding reversible error.

The judgment and order appealed from should be affirmed, with costs. All concur.